306 F.2d 554
 ELECTRONIC & MISSILE FACILITIES, INC. (formerly Five Boro Construction Corporation) and Continental Casualty Company, Appellants,
v.
UNITED STATES of America for the Use of H. W. MOSELEY d/b/a Moseley Plumbing and Heating Company, Appellee.
 No. 19351.
 United States Court of Appeals Fifth Circuit.
 July 11, 1962.
 
 Newell Edenfield, William H. Major, Buchanan, Edenfield & Sizemore, Atlanta, Ga., for appellants.
 George C. Grant, T. Baldwin Martin, Macon, Ga., Martin, Snow, Grant & Napier, Macon, Ga., of counsel, for appellee.
 Before TUTTLE, Chief Judge, and RIVES and JONES, Circuit Judges.
 TUTTLE, Chief Judge.
 
 
 1
 The appellant, Electronic & Missile Facilities, Inc., was prime contractor with the United States Government for the construction of Nike Hercules Facilities at Robins Air Force Base and Turner Air Force Base within the Middle District of Georgia. The appellee, Moseley, was a subcontractor on both projects, and was primarily responsible for the plumbing, heating and air conditioning work. This suit was instituted in the District Court for the Middle District of Georgia by the United States in behalf of the appellee under the provisions of the Miller Act, 40 U.S.C.A. § 270a-d. The complaint alleged that approximately $125,000 was due Moseley for work performed under the subcontracts, and that the appellant[1] had breached the subcontracts by refusing to pay. In the alternative, the complaint sought to rescind the contracts for fraud, and to recover for the work performed on a quantum meruit basis. The appellant moved to stay the action on the ground that both subcontracts expressly provided for arbitration of all disputes in New York City.[2] The District Court held that arbitration was contrary to the policy underlying the Miller Act, and the Court therefore enjoined the appellant from proceeding with arbitration in accordance with the provisions of the subcontracts. The appellant brought this appeal pursuant to 28 U.S.C. § 1292(a) (1). We have concluded that the District Court erred in enjoining arbitration.
 
 
 2
 The United States Arbitration Act provides that an arbitration provision in any contract "evidencing a transaction involving commerce" shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The Arbitration Act further provides that:
 
 
 3
 "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing that the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.
 
 
 4
 It is clear, first of all, that since the construction of the missile facilities in Georgia required substantial interstate movement of materials and personnel,[3] the contracts here in issue come within the purview of the Arbitration Act as contracts "evidencing a transaction involving commerce." Metro Industrial Painting Corp., et al. v. Terminal Construction Company, Inc., 2 Cir., 287 F.2d 382. Nevertheless, the District Court held the Arbitration Act inapplicable to the instant case on the theory that a contrary holding would nullify the provisions of the Miller Act requiring the appellee to sue in the District Court for the Middle District of Georgia and giving him the right to prosecute the suit to final execution and judgment.[4]
 
 
 5
 We find this theory wholly unconvincing. The venue provision of the Miller Act, requiring that suit be brought in the District where the contract was performed, was obviously not designed to favor Miller Act plaintiffs. Had Congress meant to make things easy for such plaintiffs, it would have provided them with a choice of forums in which to bring suit. As this Court noted in Texas Construction Company v. United States, 5 Cir., 236 F.2d 138 at page 143:
 
 
 6
 "* * * the requirement as to the district in which suit may be filed, contained in the Miller Act, is only one for the benefit of the defendants and may thus be waived by them, as may any other question of venue."
 
 
 7
 It seems clear, therefore, that the appellee will not be deprived of any substantial right if it is forced to comply with its voluntarily assumed obligation to arbitrate in New York City.
 
 
 8
 The Federal Employers' Liability Act[5] cases relied on by the appellee and the District Court are plainly inapposite to the case at hand. Section 6 of that Act permits an injured employee to select any of three forums in which to press his claim. This provision was clearly and unmistakably enacted for the benefit of Liability Act plaintiffs. By providing a choice of three forums for the often impecunious workingman, Congress sought to assure that he would not be dissuaded or prevented from obtaining relief by the necessity of having to litigate his claim in an inconvenient forum. Thus, in Boyd v. Grand Trunk Western Railroad Company, 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55, the Supreme Court invalidated a contract provision restricting the plaintiff's choice of forums on the ground that:
 
 
 9
 "* * * petitioner's right to bring this suit in any eligible forum is a right of sufficient substantiality to be included within the Congressional mandate of § 5 of the Liability Act: `Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void * * *.'"
 
 
 10
 * * * * * *
 
 
 11
 "The right to select the forum granted in § 6 is a substantial right. It would thwart the express purpose of the Federal Employers' Liability Act to sanction defeat of that right by the device at bar." 338 U.S. at pages 265, 266, 70 S.Ct. at pages 27, 28.
 
 
 12
 The Miller Act does not give a plaintiff the "right to select" his forum. Rather, it provides that the action must be commenced in the district where the contract was performed. This provision, as noted above, is for the benefit of the defendant, not the plaintiff, and the plaintiff is therefore not deprived of any substantial right if he is compelled to carry out his contract to litigate partially outside the district where the contract was performed.
 
 
 13
 Even apart from the question of venue, the District Court held that the Miller Act precluded arbitration, wherever conducted, because it would negate appellee's right under the Act to press his claim in a court of law, and to "prosecute the suit to final execution and judgment." This theory must be rejected for essentially two reasons. First, there is absolutely nothing in the language or legislative history of the Miller Act which indicates that Congress meant to prohibit a laborer or materialman from voluntarily substituting the procedure of arbitration for his right to litigate in a federal court. On the other hand, the United States Arbitration Act expressly and unequivocally gave the parties the right to provide for arbitration of all disputes arising under their contracts. The District Court's decision, in effect, repeals the Arbitration Act as applied to Miller Act suits even though there is not the slightest indication anywhere that Congress meant this to be so.
 
 
 14
 Secondly, the appellee has not even attempted to demonstrate how or why he would be prejudiced by having this dispute settled by arbitration rather than in the federal courts. If it could be shown that disputes arising under the Miller Act involve complicated and sophisticated legal issues which cannot readily be resolved by arbitrators untrained in the law, we would perhaps be more willing to read into the Miller Act provision giving the appellee the right to sue in the federal courts a prohibition against having the dispute settled anywhere else. But such is not the case. This dispute involves nothing more than the rights and liabilities of two business concerns under ordinary business contracts. It is precisely the type of commercial dispute which is, and has always been thought to be, a proper subject for arbitration.
 
 
 15
 Indeed, the case most strongly relied on by the appellee demonstrates the fallacy in its argument. That case is Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, where the Supreme Court held that an arbitration agreement could not prevent a defrauded purchaser of securities from suing the seller under the provisions of the Securities Act of 1933. The rationale of that decision can be gleaned from the following quotation from the Court's opinion:
 
 
 16
 "Even though the provisions of the Securities Act, advantageous to the buyer, apply, their effectiveness in application is lessened in arbitration as compared to judicial proceedings. Determination of the quality of a commodity or the amount of money due under a contract is not the type of issue here involved. This case requires subjective findings on the purpose and knowledge of an alleged violator of the Act. They must be not only determined but applied by the arbitrators without judicial instruction on the law. As their award may be made without explanation of their * * * proceedings, the arbitrators' conception of the legal meaning of such statutory requirements as `burden of proof,' `reasonable care' or `material fact,' cannot be examined." [Emphasis added]. 346 U.S. at 435-436, 74 S.Ct. at 187.
 
 
 17
 Unlike the Wilko case, however, the instant case does involve "the amount of money due under a contract," the type of issue which the Court's opinion in Wilko indicates is properly referable to arbitration. Indeed, it is significant that, as an illustration of a case concerning "the amount of money due under a contract," the Supreme Court cited Agostini Bros. Bldg. Corp. v. United States, 4 Cir., 142 F.2d 854, where the Fourth Circuit held that a suit under the Miller Act could be stayed for arbitration proceedings.
 
 
 18
 Apart from the Agostini case, other cases indicating that arbitration is allowable in a Miller Act setting are United States for Use and Benefit of Frank A. Trucco & Sons Co. v. Bregman Construction Corp., 6 Cir., 256 F.2d 851 and United States for Use and Benefit of Air-Con, Inc., v. Al-Con Development Corp., 4 Cir., 271 F.2d 904.[6] Although the contention here urged was not really analyzed in the above cited cases, apparently due to the failure of the plaintiffs therein to press the point that the Miller Act precluded arbitration, it is significant that the Court in the Bregman case, stated flatly:
 
 
 19
 "Without question, in a proper situation, the Arbitration Act applies in proceedings brought under the Miller Act."
 
 
 20
 256 F.2d at 853.
 
 
 21
 Having concluded that the Miller Act did not preclude the appellant from proceeding with arbitration, one further point remains to be considered. As an additional reason for its decision, the District Court stated:
 
 
 22
 "Another reason why this action should not be stayed is that the suit seeks to cancel or rescind for fraud both of the subcontracts. Should that phase of the suit be successful the entire contracts would be rescinded including the agreement for arbitration. Lytle v. Scottish American Company, 122 Ga. 458, 466 [50 S.E. 402]."
 
 
 23
 Where a contract comes within the purview of the United States Arbitration Act, federal not state, law controls as to whether a claim of fraud precludes arbitration of a dispute arising under the contract. Robert Lawrence Company v. Devonshire Fabrics, Inc., 2 Cir., 271 F.2d 402. Under federal law, arbitration is not barred by an assertion that the entire contract was induced by fraud; there must be a specific claim that the arbitration provision itself was fraudulently procured. Robert Lawrence Company v. Devonshire Fabrics, Inc., supra. Since the appellee did not specifically claim that the provision for arbitration was procured by the fraud of the appellant,[7] we hold that the District Court erred in concluding that the appellee's claim for rescission of the contracts on the ground of fraud was a bar to arbitration.
 
 
 24
 The judgment is reversed and the cause remanded to the District Court for further proceedings consistent with the views expressed in this opinion.
 
 
 
 Notes:
 
 
 [1]
 The other appellant, Continental Casualty Company, provided the bond for Electronic & Missile Facilities, Inc. The instant suit was brought on the bond as provided by the Miller Act. Electronic & Missile Facilities, Inc. will be referred to as "the appellant" in this opinion
 
 
 [2]
 The arbitration provisions related to "[a]ny controversy or claim arising out of or relating to this agreement or the breach thereof. * * *"
 
 
 [3]
 As the appellant states in its brief:
 "Under the facts in the case at bar, appellants are engaged in commerce regardless of which test is applied. It is undisputed in the record that appellant, ELECTRONIC & MISSILE FACILITIES, INC., a New York corporation, contracted with appellee, a Georgia corporation, to do work within the state of Georgia; that appellant sent substantial supervisory personnel across state lines; and received supplies and equipment across state lines. Working on the project were subcontractors from states other than Georgia. Moreover, the facility involved is an integral part of a transcontinental system joined and holding hands with facilities already in commerce in other states and countries by radios and telephone communications, and further joined with numerous other military basis already in commerce from almost the North Pole to Puerto Rico in a single giant network of air bases and communication facilities."
 
 
 [4]
 The Miller Act provides:
 "Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. The United States shall not be liable for the payment of any costs or expenses of any such suit." As amended Aug. 4, 1959, Pub.L. 86-135, § 1, 73 Stat. 279, 40 U.S. C.A. § 270b(b).
 
 
 [5]
 45 U.S.C.A. § 51
 
 
 [6]
 The appellee has not cited a case to the contrary
 
 
 [7]
 The appellee did not allege that he was induced to enter into the agreements for arbitration through the fraud of the appellant, but merely that the agreements were "maliciously inserted" in the contracts by the appellant in that, by providing for arbitrationin New York City, the appellant sought to make it inconvenient and expensive for the appellee, a Georgia corporation, to get paid under the contracts. This is hardly a sufficient allegation of fraud in the inducement of the arbitration agreements to prevent arbitration in accordance with the agreements.
 
 
 
 25
 RIVES, Circuit Judge (dissenting).
 
 
 26
 I agree with the district court's appraisal of the intention of Congress with respect to the two Acts here involved. The Arbitration Act enacted in 1925 is limited in its application to issues "referable to arbitration under an agreement * * *." 9 U.S.C.A. § 3. Ten years later the Miller Act was enacted in 1935 with the provision that suits of the type here involved shall be brought "in the United States District Court for any district in which the contract was to be performed and executed and not else-where" (emphasis supplied), 40 U.S.C.A. § 270b(b), and with its even more explicit provision that every person who has furnished labor or material and has not been paid therefor within ninety days "shall have the right to sue on such payment bond for the amount * * * unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him. * * *" (Emphasis supplied.) Government contractors were restricted in the kinds of agreements into which they might validly enter to those conforming to the public policy declared in the Miller Act.
 
 
 27
 The Heard Act, which was the predecessor of the Miller Act, had also been intended to protect those whose labor or material had contributed to the prosecution of the work on Government contracts. Under the Heard Act the Government was given the sole right to sue on the bond for six months after completion of the work and final settlement. Thereafter other claimants could sue but had to join in a single action. As we commented in Texas Construction Company v. United States, 5 Cir., 1956, 236 F.2d 138, 143, "it thus became essential that the place of such action be considered as a strict condition of the bringing of the suit since the right of all creditors might be completely cut off unless those conditions were strictly complied with." If the Heard Act were still in force no one could seriously urge the validity of the present agreement which provides: "Any controversy or claim arising out of or relating to this agreement or the breach thereof. * * * shall be settled by arbitration in the Borough of Manhattan, City and State of New York in accordance with the Civil Practice Act of the State of New York."
 
 
 28
 The majority quotes from Texas Construction Company v. United States, supra, the following passage: "* * * the requirement as to the district in which suit may be filed, contained in the Miller Act, is only one for the benefit of the defendants and may thus be waived by them, as may any other question of venue."
 
 
 29
 In the Texas Construction Company case that language was employed in connection with the holding that a prime contractor and his bonding company when sued in a district other than that in which the contract was to be performed and executed may waive objection to the place of suit. In that context, the language employed does not mean that the requirement of the Miller Act that suit be brought "in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere" was intended for the benefit of the defendants to the exclusion of the plaintiffs; it means no more than that the requirement relates to venue rather than jurisdiction and may be waived by both parties.
 
 
 30
 There is nothing in the language of the Act, or in its legislative history, which would restrict to the defendants the benefit of that requirement. The propriety of extending its protection to the plaintiffs is shown by the observation of the district court:
 
 
 31
 "The instant case strikingly demonstrates the purpose of Congress in thus providing an exclusive venue, and, it is believed, an exclusive forum for the resolution of Miller Act disputes. The inherent inconvenience and injustice of Moseley's being forced to transport himself, his records, and his witnesses from the scene of the activities under investigation to a point so distant as New York City is from Macon, Georgia, is readily apparent."
 
 
 32
 The prime contractor is in peculiarly favorable position to impose upon those who would enter into subcontracts with him burdensome agreements as to arbitration. The number of subcontractors from which the prime contractor may choose is limited only by the scope of the industry, while would-be subcontractors must seek the nod of a single prime contractor, who is in that respect a complete monopolist.
 
 
 33
 If, as must be conceded, the Heard Act protected those persons supplying the contractor with labor and materials against the imposition of such burden-some agreements, then, a fortiori, the Miller Act does no less. In MacEvoy Co. v. United States, 1944, 322 U.S. 102, 105, 106, 64 S.Ct. 890, 892, 893, 88 L.Ed. 1163, the Supreme Court said:
 
 
 34
 "The Miller Act, while it repealed the Heard Act, reinstated its basic provisions and was designed primarily to eliminate certain procedural limitations on its beneficiaries. There was no expressed purpose in the legislative history to restrict in any way the coverage of the Heard Act; the intent rather was to remove the procedural difficulties found to exist under the earlier measure and thereby make it easier for unpaid creditors to realize the benefits of the bond."
 
 
 35
 United States for Use and Benefit of Bryant Elec. Co. v. Aetna Casualty & Surety Co., 2d Cir., 1962, 297 F.2d 665, at page 667 points out:
 
 
 36
 "Every subcontractor and materialman not reimbursed for work done under a contract is given an unqualified right to sue on the payment bond." (Emphasis supplied.) In discussing the changes made between the Heard Act and the Miller Act, the court said, pages 668-669:
 
 
 37
 "The primary aim of the Miller Act was to secure greater protection for the subcontractor. The major changes were designed to streamline the cumbersome Heard Act machinery and to facilitate suit by those supplying labor or materials to the general contractor. * * *
 
 
 38
 "* * * The purpose of the Miller Act was clearly to provide a forum for all unpaid subcontractors." (Emphasis supplied.)
 
 
 39
 The court found such a strong public policy in favor of the protection of subcontractors and the furnishing of a forum in which they may proceed in court to enforce their right to prompt payment that it rightly concluded that, although the work was done outside the United States and therefore was not within any judicial district, an unpaid subcontractor was nevertheless entitled to maintain his suit.
 
 
 40
 In this connection, the language which the court used on page 669 is most appropriate to the situation the plaintiff in this case would face if he were not permitted to prosecute his suit, when the court said:
 
 
 41
 "* * * with no forum for enforcement, the bond becomes an empty gesture, a stately farce carried out by contractors and sureties, at the public expense, and to the detriment of the very class the Miller Act was designed to protect. We cannot accept a construction which would lead to such a result."
 
 
 42
 The Miller Act provides to every person who has furnished labor or material not only the right to sue in the district in which the contract was to be performed and executed but also the "right * * * to prosecute said action to final execution and judgment." (Emphasis supplied.) That is diametrically opposite to being required to stay the action to await the result of an arbitration.
 
 
 43
 The holding of the majority in the present case places it within the power of prime contractors to insist on agreements for arbitration which might well nigh nullify the beneficent provisions of the Miller Act. That is not conducive to the efficient, economical and just performance of Government contracts. So thinking, I respectfully dissent.