364 F.2d 705
 UNITED STATES of America for the Use and Benefit of CAPOLINO
SONS, INCORPORATED, Plaintiff-Appellant,
v.
ELECTRONIC & MISSILE FACILITIES, INC., and Continental
Casualty Company, Defendants-Appellees.
 No. 278, Docket 30225.
 United States Court of Appeals Second Circuit.
 Argued Feb. 23, 1966.
Decided Aug. 12, 1966, Certiorari Denied Oct. 28, 1966, See
87 S.Ct. 239.
 
 Morris Wagman, New York City, for plaintiff-appellant.
 Nathan Cohen, Valley Stream, N.Y., for defendants-appellees.
 Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.
 WATERMAN, Circuit Judge:
 
 
 1
 Capolino Sons, Inc., use-plaintiff, appeals from a lower court order, entered on November 22, 1965, granting appellees' motion to stay proceedings in an action to recover contract damages brought by appellant against appellees,[1] pursuant to Sections 1 and 2 of the Miller Act. 40 U.S.C. 270a-270b. The court below ordered appellant's action stayed pending arbitration of the dispute in accordance with the arbitration provision contained in the contract between appellant and Electronic & Missile Facilities, Inc. We affirm the lower court's order staying proceedings pending arbitration.
 
 
 2
 The facts are not disputed. General Services Administration awarded the appellee, Electronic & Missile Facilities, Inc., a contract to alter the seventh floor of a building located at 850 Third Avenue, Brooklyn, New York, for use as a Food & Drug Administration laboratory. Pursuant to Section 1(a) (2) of the Miller Act, 40 U.S.C. 270a(a)(2), Electronic & Missile Facilities furnished a payment bond, executed by the appellee Continental Casualty Company, guaranteeing payment to all persons supplying labor or materials in the prosecution of the alterations. Appellant was a subcontractor on the project and was primarily responsible for certain lathing, plastering, and furring work. The present action is a suit on the payment bond, brought by appellant pursuant to Section 2(a) of the Miller Act, 40 U.S.C. 270b(a), alleging appellant is owed an unpaid balance for work performed and materials supplied under the subcontract. The appellees successfully moved to stay the action on the ground that the subcontract between appellant and Electronic & Missile Facilities expressly provided for the arbitration of all disputes between them.
 
 
 3
 Section 2(a) of the Miller Act, 40 U.S.C. 270b(a), provides that every person who has furnished labor or materials in the prosecution of a construction project for the United States subject to the terms of the Act and who has not been paid therefor within ninety days 'shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him * * *.' Section 2(b) of the Miller Act, 40 U.S.C. 270b(b), goes on to provide that every such suit 'shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere * * *.' Appellant contends it cannot be required to arbitrate its dispute with Electronic & Missile Facilities, even though it agreed to do so, because the language of the Miller Act, quoted above, not only guarantees it a right to sue the prime contractor and the surety in the federal district court for any district where the contract was to be performed, but also prohibits it from agreeing to substitute the mechanisms of arbitration for this right. In short, appellant urges us to hold that an otherwise valid agreement appellant entered into to arbitrate is repugnant to Section 2 of the Miller Act and thus cannot be enforced against appellant in proceedings instituted pursuant to that Section.
 
 
 4
 We are entirely unpersuaded by appellant's argument. First, it is quite clear that there is no explicit inconsistency between the provisions of the Miller Act and the provisions of the United States Arbitration Act. 9 U.S.C. 1-14. Certainly both acts can apply simultaneously to situations like that now before us. Though a materialman like appellant would otherwise be free, pursuant to Section 2(a) of the Miller Act, if he were not paid within ninety days after the last material had been furnished, to sue the prime contractor and the surety on the contractor's payment bond, there is no inconsistency in requiring that an arbitration precede resort to the courts if the materialman and the contractor had previously agreed to arbitrate disputes. Pending the arbitration a materialman could protect against the running of the one year statute of limitations found in Section 2(b) of the Miller Act by filing a protective suit, and the complaint could later be amended in the light of the arbitration award.
 
 
 5
 Second, when our court last considered in detail the history and purpose of Section 2(b) of the Miller Act we concluded that the provision requiring Miller Act plaintiffs to bring suit in a United States district court for a district in which the contract was to be performed and not elsewhere was now of 'scant utility, save as a convenience to the defendants.' United States for the Use and Benefit of Bryant Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d 665, 100 A.L.R.2d 451 (2 Cir. 1962). We continue to believe this is a correct statement of that section's purpose. That case did not require us to decide whether Section 2(b) contained a venue requirement or a jurisdictional limitation. Id. at 669. But other courts that have decided this issue have, almost without exception, held that Section 2(b) is a venue requirement, and have agreed with us that its purpose is to give some incidental protection to Miller Act defendants. Electronic & Missile Facilities, Inc. v. United States for the Use of Moseley, 306 F.2d 554 (5 Cir. 1962), rev'd on other grounds, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963); Texas Constr. Co. v. United States for the Use of Caldwell Foundry & Mach. Co., Inc., 236 F.2d 138 (5 Cir. 1956); United States for the Use of Mitchell Bros. Truck Lines v. Jen-Mar Constr. Co., 223 F.Supp. 646 (D.Or. 1963); United States for the Use and Benefit of Industrial Eng'r. & Metal Fabricators, Inc. v. Eric Elevator Corp., 214 F.Supp. 947 (D.Mass.1963); United States for the Use and Benefit of Bailey-Lewis-Williams, Inc. v. Peter Kiewit Sons Co., Ltd., 195 F.Supp. 752 (D.D.C.1961); aff'd per curiam, 299 F.2d 930 (D.C.Cir. 1962); cf. United States for the Use and Benefit of Air-Con., Inc., v. Al-Con Dev. Corp.,271 F.2d 904 (4 Cir. 1959); United States for the Use and Benefit of Frank A. Trucco & Sons Co. v. Bregman Const. Co., 256 F.2d 851 (7 Cir. 1958). Contra United States for the Use and Benefit of Fairbanks Morse & Co. v. Bero Constr. Corp., 148 F.Supp. 295 (SDNY 1957). It is thus quite settled that Section 2(b) of the Miller Act requiring Miller Act plaintiffs to sue in a federal district court for a district in which the contract was to be performed and not elsewhere is a venue provision benefiting defendants in some cases.[2]
 
 
 6
 Third, even if Section 2(b)'s venue requirement could in some fashion be construed as extending some modicum of protection to Miller Act plaintiffs it still would in no way follow that an aspect of Section 2(b)'s protection to plaintiffs was the extension, to a materialman who became a Miller Act plaintiff, of a right to sue a prime contractor in a federal court in disregard of a prior agreement the materialman had with the prime contractor to arbitrate disputes.[3] Even assuming that Section 2(b) extends protection to Miller Act plaintiffs the section still remains a venue requirement; as such it merely regulates the locations in which judicial authority can be exercised. See Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939). There is nothing in the language or the legislative history of the Miller Act that indicates that the Congress intended Section 2(b) to do more than regulate the locality of actions commenced pursuant to Section 2(b) of the Act, supra. There is certainly no language or legislative history which indicates that Congress meant to prohibit a materialman from voluntarily substituting the mechanisms of arbitration for his right to proceed directly to a federal court. On the other hand, the United States Arbitration Act, supra, when it is applicable, quite clearly is broad enough to include Miller Act suits within its scope, and, with equal clarity, it gives the parties an enforceable right to agree to refer to arbitration differences arising under their contract. To be sure, the Supreme Court has held that certain disputes, although seemingly within the scope of the United States Arbitration Act, are, nevertheless, inappropriate for arbitration. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The Court recognized in that very case, however, that disputes involving nothing more than the rights and liabilities of business concerns under ordinary business contracts were proper subjects for arbitration. Id. at 435, 74 S.Ct. 182. Indeed, it is significant that as an illustration of a dispute properly arbitrable, the court in Wilko v. Swan, supra at 435 n. 21, 74 S.Ct. 182, cited Agostini Bros. Bldg. Corp. v. United States on Behalf of and for the Use of Virginia-Carolina Elec. Works, Inc., 142 F.2d 854 (4 Cir. 1944), a case in which the Fourth Circuit had held that a suit brought under the Miller Act could be stayed pending arbitration.
 
 
 7
 For all of the above reasons we hold the Miller Act contains nothing that in any way prevents the appellees from compelling appellant to arbitrate the dispute between them as he previously had agreed to do.
 
 
 8
 Appellant also argues that, in any event, the court below was powerless to stay proceedings pursuant to Section 3 of the United States Arbitration Act, 9 U.S.C. 3, because the contract between it and Electronic & Missile Facilities, Inc. was not one 'evidencing a transaction involving commerce' and thus the United States Arbitration Act was inapplicable. Section 3 of the United States Arbitration Act, in pertinent part, provides:
 
 
 9
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing * * * the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall * * * stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. * * *
 
 
 10
 Appellants admit that the authorization to issue stays under Section 3 does not in terms apply only to arbitration agreements in contracts 'evidencing a transaction involving commerce.' They argue, however, that Section 3 is no broader than Section 2 of the United States Arbitration Act, which declares 'valid, irrevocable and enforceable' a 'written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction * * *.' No maritime transaction is involved here, and appellant argues that unless the contract between it and Electronic & Missile Facilities, Inc., evidences 'a transaction involving comerce: the court below was powerless to stay proceedings pursuant to Section 3. And, of course, appellant goes on to argue that the contract containing the arbitration agreement was not one 'evidencing a transaction involving commerce' within Section 2 of the United States Arbitration Act.
 
 
 11
 One most assuredly can maintain that the contract between appellant and Electronic & Missile Facilities, Inc. evidenced a 'transaction involving commerce' within Section 2. We need not decide this question, however, because we think it clear that in actions arising under a law of the United States, like the Miller Act, Section 3 of the Arbitration Act authorizes a federal court to stay proceedings pending arbitration not only when the arbitration agreement is validated by Section 2 of the Arbitration Act but also when the agreement to arbitrate is validated by applicable state law. Unquestionably, Congress has power to regulate the conduct of lawsuits brought in federal forums when the substantive rights of parties arise from federally-created rights and are governed by federal law; in Section 3 of the United States Arbitration Act Congress has exercised that power. Donahue v. Susquehanna Collieries Co., 138 F.2d 3 (3 Cir. 1943); see Tenney Eng'r. Inc. v. United Elec., etc., Workers, 207 F.2d 450 (3 Cir. 1953). Presumed constitutional limitations on the power of Congress to declare substantive rules of law applicable to a case in the federal courts when the litigation is 'between Citizens of different states,' U.S.Const. art. III, 2, may justify a construction of Section 3 in diversity cases as referring only to arbitration agreements validated by Section 2. Bernhardt v. Polygraphic Co., 350 U.S. 198, 202, 76 S.Ct. 273, 100 L.Ed. 199 (1956); id. at 208, 76 S.Ct. at 279 (Frankfurter, J., Concurring). But there is no reason for adopting a like construction in the present case which is commenced in the federal courts, because Congress in Section 2(a) of the Miller Act granted materialmen a federal right of action against prime contractors on federal projects who fail to pay their bills promptly. Therefore, the court below was authorized by Section 3 to stay proceedings pending arbitration if the arbitration agreement was valid and enforceable under applicable local law-- here the law of New York.
 
 
 12
 Beyond peradventure, New York's arbitration law validates the agreement to arbitrate between appellant and Electronic & Missile Facilities, Inc. Section 7501 of the New York Civil Practice Law and Rules provides that '(a) written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy * * *.' This provision is applicable in the present case.
 
 
 13
 Affirmed.
 
 
 
 [1]
 Both the prime contractor, Electronic & Missile Facilities, Inc., and the surety on the payment bond, Continental Casualty Company, are appellees here
 
 
 [2]
 Judge Rives, dissenting In Electronic & Missile Facilities, Inc. v. United States for the Use of H. W. Moseley, supra 306 F.2d at 558-560, argued that Section 2(b) benefited plaintiffs because it was more convenient for them to bring suit in a district in which the contract was to be performed than it was to bring suit elsewhere. That might have been true in that case. But the place in which the contract was to be performed is not necessarily, or even usually, the palce in which a Miller Act plaintiff may find it most convenient to sue. Without question it would be more convenient for Miller Act plaintiffs if they only had to contend with the Judicial Code's general venue provision, 28 U.S.C. 1391
 
 
 [3]
 The right of action is, of course, granted by Section 2(a) of the Act. The issue here is whether the Miller Act also prevents a materialman form entering into an enforceable agreement to arbitrate disputes in lieu of the immediate institution of an action in a federal court