**ENVIROLITE ENTERPRISES, INC., Plaintiff,**

**v.**

**GLASTECHNISCHE INDUSTRIE PETER LISEC GESELLSCHAFT M.B.H., Defendant.**

**No. 84 Civ. 7617 (RLC).**

United States District Court, S.D. New York.

Oct. 3, 1985.

Brown, Raysman & Millstein, New York City (Peter Brown, New York City, of counsel), for plaintiff.

Wender, Murase & White, New York City (W. Jeffrey Garson, New York City, of counsel), for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

On June 9, 1982, plaintiff Envirolite Enterprises, Inc. ("Evirolite") and defendant Glastechnische Industrie Peter Lisec Gesellschaft M.B.H. ("Lisec") entered into an agreement under which Lisec would sell to Envirolite certain equipment used in the manufacture of glass windows. The equipment was delivered in late 1982, and installed by Lisec at Envirolite's plant.

Printed on the reverse side of page one of the agreement, in German, was a set of terms and conditions of sale and delivery of the equipment. Paragraph eleven of the terms and conditions reads as follows, as translated by Lisec:

*Place of Performance and Competent Court*

Place of performance for payments is Ulmerfelt-Hausmening; for delivery of goods the applicable plant of Seller. Exclusive jurisdiction for disputes arising out of manufacture and delivery contracts with domestic or foreign customers is the court within whose jurisdiction [Lisec's] principal place of business is located [i.e. Amstetten-Hausmening, Austria]. Austrian law shall be applied.

Plaintiff accepts defendant's translation for purposes of this motion (Brown Affidavit in Opposition to Motion to Dismiss ¶ 5).

In March, 1984, Envirolite filed a voluntary petition for reorganization under Chapter Eleven of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.*, in the Bankruptcy Court for the Southern District of New York. Envirolite has continued in operation of its business as a debtor-in-possession, and no trustee has been appointed. In its schedule of liabilities filed with the Bankruptcy Court, Envirolite listed Lisec as a disputed creditor.

On October 22, 1984, Envirolite filed a complaint against Lisec in this court alleging breach of contract, fraud in the inducement, and breach of warranty. Lisec answered on December 28, 1984, denying all liability, raising certain compulsory counterclaims, and asserting, *inter alia*, the defense of improper venue.

Plaintiff filed its first set of interrogatories on December 12, 1984. On January 2, 1985, defendant informed plaintiff that it (defendant) was planning to move to dismiss for improper venue, and suggested that discovery be deferred until after the court ruled on that motion. Plaintiff demurred, and defendant filed its first set of interrogatories on January 15, 1985.

On February 5, 1985, Lisec moved the Bankruptcy Court under 11 U.S.C. § 362 to lift the automatic stay preventing Lisec from attempting to regain possession of the equipment delivered to Envirolite. A hearing was held on February 14, 1985, at which Lisec appeared and presented evidence, and the motion was granted.

The case is currently before the court on Lisec's motion to dismiss for improper venue pursuant to 28 U.S.C. § 1406(a).

DISCUSSION

Lisec argues that venue is improper in New York because the purchase and sale agreement contains a forum selection clause requiring that all litigation arising out of the agreement be brought in Austria.

Envirolite argues that the forum selection clause does not apply to this action because this action does not "arise out of" the sales agreement between it and Lisec. Envirolite notes that the forum clause by its terms governs only those "disputes arising out of manufacture and delivery contracts" between Lisec and its customers. Envirolite contends that this suit is not such a dispute because the complaint includes claims for fraudulent inducement and breach of warranty, matters outside the four corners of the contract.

The difficulty with Envirolite's reasoning "is that it ignores the reality that the ... contract is the basic source of *any* duty to [Envirolite]. There is no evidence suggesting that the clause was not intended to apply to all claims growing out of the contractual relationship. If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as negligent design, breach of implied warranty, or misrepresentation.... We agree with those courts which have held that where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain." *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 203 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983) (emphasis in original). *See also Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718 (2d Cir.1982); *Cruise v. Castleton, Inc.,* 449 F.Supp. 564 (S.D.N.Y.1978) (Carter, J.); *Full-Sight Contact Lens Corp. v. Soft*

*Lenses, Inc.*, 466 F.Supp. 71 (S.D.N.Y.1978) (Pierce, J.).[1]

The two cases cited by Lisec to support its position are inapposite. In *Fantis Foods, Inc. v. Standard Importing*, 63 A.D.2d 52, 406 N.Y.S.2d 763 (1st Dep't 1978), *reversed on other grounds*, 49 N.Y.2d 317, 425 N.Y.S.2d 783 (1980), the Appellate Division did not enforce a forum selection clause governing "any eventual difference or discord ... that may arise from the present agreement," but in that case the only cause of action was the tort of conversion, truly unrelated to any contract between the parties. And in *Hodom v. Stearns*, 32 A.D.2d 234, 301 N.Y.S.2d 146 (4th Dep't), *appeal dismissed*, 25 N.Y.2d 722, 307 N.Y.S.2d 225 (1969), the forum selection clause governed "[a]ll suits ... commenced under [the] Agreement." The court ruled that a suit containing a count for fraudulent inducement was not commenced under the agreement, and therefore did not enforce the forum selection clause. But the court also took pains to emphasize that the language "commencing under" is more restrictive than the language "arising out of"—the language in the instant case. *Id.* at 236, 301 N.Y.S.2d at 148.

■ Consequently, the court holds that the forum selection clause in the agreement between Envirolite and Lisec by its terms applies to this litigation.

Envirolite further argues that Lisec waived its objections to venue in the Southern District of New York by moving the Bankruptcy Court in this district for the lifting of the stay on the equipment it delivered to Envirolite, and by serving Lisec with interrogatories in the instant action.

Envirolite relies heavily on *In re Lombard-Wall, Inc.*, 44 B.R. 928, 936 (Bankr.S. D.N.Y.1984), in which Bankruptcy Judge Ryan concluded that where a creditor files a proof of claim with the bankruptcy court, the creditor thereby consents to bankruptcy court jurisdiction over the debtor's objections or counterclaims that are necessary for adjudication of the claim. Envirolite concedes that Lisec filed no proof of claim in this case,[2] but asserts that Lisec's motion to lift the automatic stay, its participation in the stay hearing, and its offer of proof on issues relating to the parties' rights under their agreement are for all practical purposes the equivalent of the proof of claim relied on in *Lombard-Wall*. Plaintiff argues that Envirolite's claims against Lisec in this court, arising out of the same transaction upon which Lisec based its actions in Bankruptcy Court, is a counterclaim as to which Lisec has given implied consent to be sued on in the Bankruptcy Court for this district. Under the Bankruptcy Amendment and Federal Judgeship Act of 1984, 28 U.S.C. §§ 151, 157, the Bankruptcy Court for this district constitutes a unit of this court. Therefore, Envirolite concludes, Lisec has effectively consented to adjudication of this action in this court.[3]

1. It is unclear whether federal or state law governs the determination of enforceability of the forum selection clause in this case. *See Coastal Steel v. Tilghman Wheelabrator, supra*, 709 F.2d at 201. The court need not decide the issue, however, because the relevant state law would be New York's, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941), and New York law "is in substantial conformity with the federal approach ... and would lead to the same result." *Cruise v. Castleton, Inc., supra*, 449 F.Supp. at 568.

2. Initially, Envirolite asserted, falsely, that "Lisec has filed a proof of claim in [the Envirolite bankruptcy] proceedings ..." (Plaintiff's brief at 5). After Lisec pointed out this misstatement in its reply brief, Envirolite conceded that it had

meant to say only that Lisec has performed actions which Envirolite considers equivalent o the filing of a proof of claim (Plaintiff's reply brief at 2 n. 2).

3. Envirolite styles Bankruptcy Judge Ryan's *Lombard-Wall* opinion a decision of the District Court (Plaintiff's brief at 5). This is incorrect. By order dated January 20, 1984, Judge Goettel of this court referred the *Lombard-Wall* matter to Bankruptcy Judge Ryan as a special master. Bankruptcy Judge Ryan's decision was merely a recommendation to Judge Goettel which, in an opinion cited by neither party in this litigation, Judge Goettel accepted in part and rejected in part. *In re Lombard-Wall, Inc.*, 48 B.R. 986 (S.D.N.Y.1985). Judge Goettel did not reach Bankruptcy Judge Ryan's conclusion that filing

■ The rule in *Lombard-Wall*, however, does not govern this case. *Lombard-Wall* deals with consent to the Bankruptcy Court's *jurisdiction*. In the instant motion, Lisec does not contest the court's jurisdiction, but rather claims *venue* is improper. Venue may be improper even where there concededly is jurisdiction. The distinction between jurisdiction and venue in this context is highlighted by the Third Circuit's recent observation in *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* supra, 709 F.2d at 204: "We know of no authority supporting the proposition that the filing of a proof of claim is a waiver of ... a *forum selection* clause" (emphasis added).

■ Second, and more importantly, Lisec's actions in the instant matter do not, as a matter of law, constitute waiver of its objections to venue. Under the Bankruptcy Code, the filing of Envirolite's bankruptcy petition in March, 1984, put in place a stay preventing, *inter alia,* "any act to obtain possession ... of property from the estate." 11 U.S.C. § 362(a)(3). On January 31, 1985, Lisec inspected the equipment in which it claims it has a security interest. Lisec found that the equipment was being stored out of doors, where it was rusted, and in some instances, covered with snow (Stay Hearing Transcript at 34–36). Lisec found that the equipment's remaining value was rapidly being destroyed, and concluded that immediate action was required. It moved, therefore, for the stay to be lifted.

Under these circumstances, there was no waiver of the parties' contractual forum selection clause. Lisec did not choose to litigate in this forum and then, at a later time, seek to disavow its voluntary choice of forum. To the contrary, it was Envirolite who chose to file for bankruptcy in the Southern District of New York, and Lisec simply acted to protect itself.

A much closer analogy exists between this case and *M.S. Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). That case was in part a proceeding in rem against a foreign tug. During the pendency of defendant's motion to dismiss, based upon the forum-selection clause, defendant filed a complaint in limitation, which under admiralty law had to be filed no later than six months after initiation of the in rem proceeding. The *Zapata* plaintiff's attempt to characterize this action as a waiver of the forum selection clause was rejected by the Supreme Court.

It is clear that [defendant's] action in filing its limitation complaint in the District Court in Tampa was, so far as [plaintiff] was concerned, solely a defensive measure made necessary as a response to [plaintiff's] breach of the forum clause of the contract.... [Defendant] had no other prudent alternative but to protect itself by filing for limitation of its liability.... There is no basis on which to conclude that this purely necessary defensive action by [defendant] should preclude it from relying on the forum clause it bargained for.

*Id.* at 19–20, 92 S.Ct. at 1918. Similarly, Lisec had no "prudent alternative" to the "purely necessary defensive action" of moving for the lifting of the stay in the Bankruptcy Court for this district.

■ Envirolite also argues that Lisec's service of a set of interrogatories in this action constitutes a waiver of its venue objection. While it is true that "a party may waive its objection to venue by its pre-trial conduct," *Sherman v. Moore,* 86 F.R.D. 471, 473 (S.D.N.Y.1980) (Conner, J.), there has been no waiver under the facts of

a proof of claim constitutes consent to jurisdiction because he ruled that under the new statute, 28 U.S.C. § 157, the Bankruptcy Court had jurisdiction irrespective of the parties' consent since the litigation involved a "core proceeding" under the statute. Judge Goettel did say in dictum that "[l]ogic, together with the structure and layout of section 157, suggests that a party's consent can ... vest the bankruptcy court with

jurisdiction over non-core proceedings[,]" *id.* at 990, but he did not state whether filing a proof of claim constitutes such consent. In any event, the rule in this circuit seems to be that where jurisdiction cannot be predicated on other grounds, consent of the parties in a bankruptcy case is sufficient, and filing a proof of claim constitutes such consent. *Nortex Trading Corp. v. Newfield,* 311 F.2d 163, 164 (2d Cir.1962).

the instant case. Lisec has served but one set of interrogatories, and only after Envirolite refused to defer discovery until after the court decided this motion. Lisec raised and reiterated its objections to venue in its answer (¶¶ 70–73), in a letter to opposing counsel dated January 4, 1984, and in this motion, filed three days after it served its set of interrogatories. Under these circumstances, Lisec can hardly be said to have waived its objections to venue.

Envirolite argues further that even if Lisec did not waive its objections to venue, the forum selection clause is invalid, and enforcement would be unfair.

In *Zapata, supra,* 407 U.S. at 10, 92 S.Ct. at 1913, the Supreme Court held that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Although *Zapata* was a suit in admiralty, the rule of the case applies to non-admiralty cases as well. *Bense v. Interstate System of America, supra,* 683 F.2d at 721 (2d Cir.1982).

Under *Zapata,* Envirolite has the burden of establishing that, "notwithstanding its *prima facie* validity, the forum clause should not be enforced." *Gaskin v. Stumm Handel GmbH,* 390 F.Supp. 361, 364 (S.D.N.Y.1975) (Cannella, J.). The burden so placed on Envirolite is to show "either that under the ordinary principles of contract law the clause is voidable for reasons such as fraud or overreaching, or that enforcement of the forum clause which is valid as a matter of contract law would, under the particular circumstances of the case, be unreasonable and unjust." *Cruise v. Castleton, Inc., supra,* 449 F.Supp. at 567–68, *citing Gaskin v. Stumm Handel GmbH, supra.*

Envirolite argues, first, that the forum selection clause is invalid as a matter of contract law. It contends that since its complaint specifically alleges that it was induced to sign the contract by Lisec's fraudulent misrepresentations, the contract is void, or voidable by the defrauded party, and the forum clause is therefore invalid.

A forum selection clause, however, is not rendered invalid "any time a dispute arising out of a transaction is based upon an allegation of fraud[.]" *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 *reh. denied,* 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974). Rather, a "forum-selection clause is not enforceable if the inclusion of *that clause* in the contract was the product of fraud or coercion." *Id.* (emphasis supplied). Here, Envirolite does not claim that the forum selection clause, specifically, was induced by fraud; therefore, the clause is not invalid as a matter of contract law.

Envirolite argues that even if the clause is not invalid as a matter of contract law, enforcement would be unreasonable and unjust under the circumstances of this case. Envirolite stresses that it is a debtor in bankruptcy, financially crippled, and claims that if the clause is enforced and the complaint dismissed in this forum, it will not be able to litigate in Austria.

A party may escape enforcement of a forum selection clause if he can show "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Zapata, supra,* 407 U.S. at 18, 92 S.Ct. at 1917. Though Envirolite asserts conclusorily that it would be unable to litigate in Austria, it has not explained why the costs involved would be prohibitive in proportion to the recovery—$10 million—being sought. Envirolite may indeed have limited resources, but it has been able to retain counsel to represent it in this forum. Envirolite has not explained why it could not enter into similar arrangements with Austrian counsel in order to litigate in the contractual forum. Nor can the costs of transporting witnesses to Austria be considered prohibitive in this context. The court does not doubt that if plaintiff's claim is possessed of the slightest merit, this case will be pursued in the selected forum. *See Gaskin v. Stumm Handel GmbH, supra,* 390 F.Supp. at 369.

Envirolite also argues that it would be unreasonable and unjust to enforce the clause because "[e]nforcement of the choice-of-forum provision in this case would violate the fundamental policy of the Bankruptcy Code to provide a single forum in which to protect, preserve and distribute the assets of a bankrupt's estate." *In re Technical Industries, Inc.,* 21 B.R. 863, 866 (Bankr.M.D.Tenn.1982).

■ The public policy Envirolite refers to, however, favors centralization of bankruptcy proceedings not in a single judicial district, but in the Bankruptcy Court where the chapter proceeding is pending. *See, e.g., id.* at 866. In this case, however, the proceedings will not be centralized even if the forum selection clause is *not* enforced, because Envirolite instituted a separate action in this court. There is thus no reason to deny enforcement of the forum selection clause; this litigation will proceed in separate fora in any event.[4]

What is more, even if enforcement of the clause would defeat the public policy favoring centralization of proceedings, in this case, non-enforcement would defeat another public policy—the policy in favor of enforcing contractual obligations. As the Third Circuit has noted:

> We agree that Congress, in enacting a broad protective federal jurisdiction provision, adopted a policy of facilitating the collection and distribution of debtor estates. We do not agree, however, that section 1471(b) [of title 28 of the United States Code] was meant to change the contractual rights of the parties.... Nothing in the legislative history of the Bankruptcy Code has been called to our attention suggesting that Congress intended to make a change in the public policy favoring forum selection clauses which is manifested in the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1976), or in the common law announced in [*Zapata*] and similar state and federal cases. Sec-

tion 1471(b) does not announce a contrary public policy.

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., supra,* 709 F.2d at 202.

■ Envirolite further argues that it would be unfair to enforce the forum-selection clause in this case because—Envirolite claims—Lisec came to the United States specifically to lure American companies like Envirolite to become customers. Envirolite asserts that Lisec represented that it had a strong American service operation, but in fact Envirolite regularly had to contact Lisec in Austria to obtain service. Lisec denies Envirolite's charges.

The argument Envirolite raises here is similar to the argument it raised regarding voidability of the contract because of fraudulent inducement. The court's conclusion is similar, as well: In order for the alleged fraud to have any bearing on whether to enforce the forum selection clause, the alleged fraud must involve that clause. Here, Envirolite cannot claim that it was misled regarding the situs of any litigation that eventually might arise. Indeed, Envirolite knew Lisec was an Austrian concern, that Lisec's principals were Austrian nationals, and that the equipment was being manufactured in Austria. The contract specifically provided for performance in Austria and for litigation of claims in Austria. In fact, the principals of Envirolite traveled to Austria to view and evaluate the equipment (Second Lisec Affidavit ¶ 7). On this record, any claim that Envirolite was misled into believing that all potential litigation would be in the United States is simply not credible.

Finally, Envirolite argues that the forum-selection clause should not be enforced because it was not a vital part of the contract. *See Zapata, supra,* 407 U.S. at 14. Envirolite notes that the clause was printed in German on the back of one of the pages of the contract, which was otherwise written in English and urges the inference that the

---

4. Lisec argues that the Bankruptcy Court's reduced jurisdiction under *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982), diminishes and may well completely negate the public policy upon which Envirolite bases its argument. In light of the court's decision in this case, it is not necessary to reach that question.

forum clause was not discussed by the parties or actually agreed to, and was therefore not vital.

 According to Lisec, however, the forum clause was a vital part of the contract. As noted in Lisec's Second Affidavit, Envirolite originally agreed to obtain third-party financing for the purchase. However, when this financing fell through, Envirolite asked Lisec to finance the transaction itself. Lisec was able to obtain the necessary assistance of an Austrian bank by assuring the bank, among other things, that any disputes would be litigated in Austria. The forum-selection clause, therefore, *was* important. Having received the benefits of the bargain, Envirolite should not be permitted to escape its corresponding contractual obligations.

Plaintiff has not carried its burden of showing why the forum-selection clause should not be enforced. Accordingly, defendant's motion to dismiss for improper venue is granted.

IT IS SO ORDERED.