**ARROW PLUMBING AND HEATING, INC., Plaintiff,**

v.

**NORTH AMERICAN MECHANICAL SERVICES CORP., d/b/a North American Construction Corp. and St. Paul Fire and Marine Insurance Company, Defendants.**

No. C.A. No. 92–372L.

United States District Court, D. Rhode Island.

Jan. 25, 1993.

Geoffrey A. Regan, McGovern Noel & Benik, Providence, RI, for plaintiff.

Michael A. Kelly, W. Mark Russo, Adler Pollock & Sheehan, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is presently before the Court on the motion of defendants to transfer this action to the United States District Court for the Western District of Texas, pursuant to 28 U.S.C. § 1406(a).

This action arises out of a construction project at the Advanced Weapons Research Facility, Naval Underwater Systems Center in Newport, Rhode Island. Defendant North American Mechanical Services Corp., d/b/a North American Construction Corp. ("North American") was the prime contractor on the job under contract with the United States government. North American engaged plaintiff Arrow Plumbing and Heating, Inc. ("Arrow") to perform certain work and provide materials under a "Subcontract Agreement" which contained the following provision:

> The Subcontract Agreement and any claims arising under it shall be governed by the laws of the State of Texas and exclusive venue shall be proper in Bexar County, Texas.

Defendant St. Paul Fire and Insurance Co. ("St. Paul") issued performance and payment bonds for the project as required under the Miller Act, 40 U.S.C. § 270a.

Arrow performed work on the project until May 1, 1992, when a dispute as to payment under the subcontract resulted in the termination of Arrow's involvement in the project. On July 1, 1992, Arrow filed for bankruptcy protection in the United States Bankruptcy Court for the District of Rhode Island.

Arrow filed the instant action in this Court on July 7, 1992, seeking payment under the subcontract, damages for breach of contract and recovery in quantum meruit from North American, and payment under the bond against North American and St. Paul. Jurisdiction was claimed under the diversity statute, 28 U.S.C. § 1332(a), and the Miller Act, 40 U.S.C. § 270b.

Defendants moved for transfer of the action to the United States District Court for the Western District of Texas pursuant to the forum selection provision in the sub-

contract. Plaintiff has objected on the ground that the Miller Act requires that this action be heard in the District of Rhode Island, and that it would be unreasonable to enforce the forum selection provision. The parties engaged in oral argument on October 9, 1992, and the matter was taken under advisement. It is now in order for decision.

### Discussion

■ Defendants move to transfer this case under 28 U.S.C. § 1406(a) which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

A motion under § 1406(a) for improper venue, rather than under § 1404(a) for inconvenience, is appropriate where the moving party seeks to enforce a contractual forum selection clause. *D'Antuono v. CCH Computax Systems, Inc.*, 570 F.Supp. 708 (D.R.I.1983).

Plaintiff seeks to avoid the contractual forum on two grounds. First, it argues that the Miller Act vests exclusive venue in this Court. Second, he argues that enforcement of the forum selection clause is unreasonable given plaintiff's present circumstances.

### A. The Miller Act

■ Plaintiff argues that this case may not be transferred because the Miller Act vests exclusive venue in this Court. The relevant provision, 40 U.S.C. § 270b(b) provides:

> Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere ...

Although the language of this subsection appears to support plaintiff's contention, decisional law in this area makes clear that the statutory venue may be overridden by a valid contractual forum selection provision.

The Supreme Court has held that Section 270b is not jurisdictional, but rather is only a venue provision. *F.D. Rich Co. v. United States*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). Venue may be waived by a failure to timely object, *Commercial Casualty Ins. Co. v. Consolidated Stone Co.*, 278 U.S. 177, 49 S.Ct. 98, 73 L.Ed. 252 (1929), or may be waived or varied in advance by contract. *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). Furthermore, the Miller Act venue provision is intended to benefit defendants, not plaintiffs. *See United States ex rel. Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*, 832 F.2d 1150, 1152 (9th Cir.1987) (Miller Act venue provision intended to protect the surety from liability beyond the amount of the bond that might result from multiple suits in several different jurisdictions.); *United States ex rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705, 707 (2d Cir.1966); *Electronic & Missile Facilities, Inc. v. United States ex rel. Moseley*, 306 F.2d 554, 556 (5th Cir. 1962), *rev'd on other grounds, Moseley v. Electronic & Missile Facilities, Inc.*, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963).

The Fifth Circuit has specifically held that a valid forum selection clause can override the Miller Act venue provision. In *In re Fireman's Fund Ins. Cos.*, 588 F.2d 93 (5th Cir.1979), the Court stated,

> The Miller Act venue provision exists for the convenience of the parties. Such a provision is subject to variation by their agreement which should especially be given effect in a case such as this, where the defendants, for whose special protection the venue clause exists, themselves have moved for transfer in accord with the forum selection clause.

*Id.* at 95. Other courts have followed that reasoning in upholding the enforceability of arbitration clauses in subcontract agreements. *See, e.g., United States ex rel. Capolino Sons, Inc. v. Electronic & Mis-*

*sile Facilities, Inc.,* 364 F.2d 705 (2d Cir. 1966).

■ Plaintiff suggested at oral argument that even if the contractor could invoke the forum selection clause the surety cannot do so, presumably because the surety was not a party to the subcontract agreement. The Court does not agree with this reasoning. A surety generally stands in the shoes of its principal. *United States ex rel. Fireman's Fund Ins. Co. v. Frank Briscoe Co.,* 462 F.Supp. 114, 116 (E.D.La. 1978). It may avail itself of any defense which is available to its principal except those that are purely personal, such as bankruptcy or infancy. 72 C.J.S. Principal & Surety § 189 at 318–19 (1987). Although a surety is not a party to a subcontract agreement, its liability under a payment bond is determined by the agreements between its principal and the subcontractor. The surety therefore should have all the benefits and suffer all the disadvantages that would accrue to the general contractor under those agreements. 462 F.Supp. at 117. *See also In re Fireman's Fund Ins. Cos.,* 588 F.2d 93 (5th Cir.1979) (holding that forum selection clause in subcontract overrides Miller Act venue provision and warrants transfer of action against contractor and surety).

The Miller Act does not require that this action be heard in this Court. The motion to transfer must therefore be decided on the standard for determining the enforceability of any other contractual forum selection clause.

**B. Enforceability of the forum selection clause**

■ The enforceability of a forum selection clause is governed by the standard enunciated by the Supreme Court in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In that case the Court gave effect to a forum selection clause, holding that such a clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10. In applying that standard, the First Circuit

has stated that "[t]o establish that a particular choice-of-forum clause is unreasonable, a resisting party must present evidence of fraud, undue influence, overweening bargaining power or such serious inconvenience in litigating in the selected forum that it is effectively deprived of its day in court." *Fireman's Fund American Insurance Co. v. Puerto Rican Forwarding Co.,* 492 F.2d 1294, 1297 (1st Cir.1974). A forum selection clause is also unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought." *The Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916.

Plaintiff argues that trial of this case in the Western District of Texas would present a serious inconvenience and violate a public policy of keeping actions related to a bankruptcy in a single district. Plaintiff asserts that virtually all of the witnesses and evidence which would be presented in this litigation are in this jurisdiction, and that it would be prohibitively expensive to transport witnesses to Texas for trial. Plaintiff also states that it is involved in substantial court proceedings in this district in connection with its bankruptcy filing. At oral argument, plaintiff's lawyer asserted that plaintiff would not be able to continue this action if it were transferred.

Plaintiff faces a heavy burden in showing that trial in the selected forum in "seriously inconvenient." It must demonstrate that "trial in the contractual forum will be so gravely difficult and inconvenient that [it] ... will for all practical purposes be deprived of [its] day in court." *The Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917.

■ Plaintiff has failed to carry that burden. Plaintiff has failed to provide any factual support for its assertion that it will be unable to pursue this matter in Texas. Although most persons associated with the construction project are probably located in this jurisdiction, plaintiff has not identified any witnesses or stated how their testimony is necessary to the resolution of this matter. Defendant suggests that the matters in dispute primarily involve the timing of plaintiff's payment submittals, rather than the quality of plaintiff's work, and

will require mostly documentary proof. Plaintiff has the burden of specifying who the key witnesses are and why their testimony is material. *Sorrels Steel Co. v. Great Southwest Corp.*, 651 F.Supp. 623, 629 (S.D.Miss.1986).

Plaintiff's argument that its financial situation should lead the Court to find serious inconvenience is similarly unsupported. Plaintiff essentially rests on the mere fact that it is in bankruptcy. It provides no additional evidence of its financial capacity to pursue this action. However, it is clear that the fact that a party is in bankruptcy is not sufficient to prevent enforcement of a contractual forum selection clause. A party must affirmatively demonstrate that its financial situation is such that to transfer the action will deprive the party of its day in court. For example, in *In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir. 1987), the Third Circuit held that Bankruptcy Court erred in retaining a debtor/subcontractor's contract claim against a general contractor where a forum selection clause provided for exclusive venue elsewhere. The debtor had provided no evidence as to its ability to litigate in the contractual forum, and "neither the bankruptcy court's intimate knowledge of nor [defendant's] concessions concerning [debtor's] precarious financial condition operates to discharge its burden of establishing grave inconvenience." *See also Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.*, 53 B.R. 1007 (S.D.N.Y.1985), *aff'd*, 788 F.2d 5 (2d Cir.1986) (dismissing contract suit by plaintiff who was in bankruptcy pursuant to forum selection provision providing that all suits would be brought in Austria).

Transfer of this action does not violate a public policy embodied in the Bankruptcy laws. A number of courts have recognized that public policy does favor centralization of bankruptcy proceedings in the bankruptcy court. *In re Mercury Masonry Corp.*, 114 B.R. 35 (Bankr.S.D.N.Y.1990); *In re Wheeling–Pittsburgh Steel Corp.*, 108 B.R. 82 (Bankr.W.D.Pa.1989). However, that public policy favors centralization of bankruptcy proceedings in a single court, not a single judicial district. It does not apply where, as here, a debtor has chosen to bring an action in a separate forum. *Envirolite Enterprises*, 53 B.R. at 1013.

Transfer to the Western District of Texas is appropriate in this case. Although plaintiff's present circumstances may make it difficult to pursue this action in that forum, it has not met its burden of showing that transfer presents such a serious inconvenience that it will be effectively deprived of its day in court. Absent such a showing, plaintiff may not escape the restrictions of an agreement it freely executed.

### Conclusion

For the reasons given above, defendants' motion to transfer this action to the United States District Court for the Western District of Texas, pursuant to 28 U.S.C. § 1406(a), is granted.

It is so ordered.