**In re MILLENNIUM STUDIOS, INC., Debtor.**

**Millennium Studios, Inc., Plaintiff,**

v.

**Man Roland, Inc., Defendant.**

**No. CIV.A. DKC 2002–1313. Adversary No. 02–1036–PM.**

United States District Court, D. Maryland.

Nov. 22, 2002.

---

Lynn A. Kohen, James J. O'Neill, III, Tydings and Rosenberg LLP, Baltimore, MD, for plaintiff.

Charles Kevin Kobbe, Piper Rudnick LLP, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this adversary proceeding based on breach of contract and related claims brought by Plaintiff Millennium Studios, Inc. (Millennium), a debtor involved in Chapter 11 bankruptcy proceedings, is Defendant MAN Roland, Inc.'s (MAN Roland) Motion to Withdraw Reference to Bankruptcy Court and Motion to Dismiss based on a forum selection clause. The parties have had full opportunity to brief the issues and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the court will grant Defendant's motion to withdraw reference to bankruptcy court and, subject to hearing from the parties, either grant Defendant's motion to dismiss or transfer this case to the United States District Court for the Northern District of Illinois.

## I. Background

The following facts are alleged by Plaintiff or are uncontroverted by Plaintiff. Plaintiff is a Maryland corporation that operates a printing, photographic, and design business. Defendant MAN Roland manufactures and sells printing presses and related products. Defendant's North American headquarters is located in Illinois. In May 2000, Defendant and Plaintiff entered into a contract for the sale to Plaintiff of a used MAN Roland 300 printing press and related products. The contract contained a forum selection clause designating Illinois as the forum for the resolution of disputes between the parties. The clause reads:

> PURCHASER AND SELLER CONSENT, AGREE, AND SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE APPROPRIATE STATE COURT IN DUPAGE COUNTY, ILLINOIS, OR FEDERAL COURT IN THE NORTHERN DISTRICT OF ILLINOIS TO RESOLVE ALL DISPUTES, CONTROVERSIES, DISAGREEMENTS, SUITS, OR PROCEEDINGS BETWEEN THE PARTIES[.]

Paper 5. The purchase price for the used printing press was $1.1 million. Plaintiff made a down payment of $20,000 and financed the purchase by executing three promissory notes to Defendant in the amount of $1.08 million. Personal guarantees were also executed by Plaintiff's principals.

On or about June 28, 2000, Plaintiff received the printing press from Defendant. Defendant began installation of the press soon after that. During the installation period, Plaintiff learned for the first time that the press was missing a myriad of parts that were critical to the operation of the press. Plaintiff also discovered that the press had additional extensive mechanical problems unrelated to the missing parts. The installation was not completed until September 1, 2000. Due to the missing parts and mechanical prob-

lems, Defendant did not hand over the press to Plaintiff for commercial production until November 10, 2000. Even then, the press did not operate effectively and continued to malfunction. Plaintiff notified Defendant of the problems with the press which were so severe that they caused Plaintiff to shut down its commercial printing operations for 23 days between November 2000 and March 2001, leading to a disruption in Plaintiff's business.

During the period while Defendant was installing the press, Defendant assigned its rights under the promissory notes to its parent corporation, MAN Capital Corp. (MAN Capital). On July 31, 2001, MAN Capital declared Plaintiff in default and accelerated the balance due under the notes. On September 20, 2001, MAN Capital filed a replevin action against Plaintiff in Prince George's County, Maryland. Plaintiff filed a petition under Chapter 11 of the Bankruptcy Code on October 13, 2001. On February 4, 2002, the bankruptcy court denied MAN Capital's motion to lift the stay of the Prince George's County lawsuit and MAN Capital is now a creditor in Plaintiff's Chapter 11 case.

On February 5, 2002, Plaintiff initiated this proceeding against Defendant, asserting claims of breach of contract, negligence, breach of express warranty, breach of implied warranty, intentional misrepresentation, and negligent misrepresentation based on a myriad of installation and mechanical problems Plaintiff experienced with the printing press. Plaintiff seeks not less than $500,000 in damages under each count.

On April 10, 2002, Defendant simultaneously filed a motion with the district court to withdraw reference to bankruptcy court and filed a motion with the bankruptcy court to dismiss Plaintiff's claims against it. Plaintiff responded by filing oppositions to both motions with the district court on May 23, 2002. Defendant did not reply to Plaintiff's oppositions.

## II. Motion to Withdraw Reference to Bankruptcy Court

### A. Standard of Review

 Defendant seeks the permissive withdrawal of the reference of this adversary proceeding to the bankruptcy court pursuant to 28 U.S.C. § 157(d), which provides in pertinent part, "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." The district court has "broad discretion" in deciding whether reference should be withdrawn for cause shown. *In re C–TC 9th Avenue Partnership*, 177 B.R. 760, 765 (N.D.N.Y.1995). The first factor the district court should consider in determining whether cause exists for withdrawal is whether the matter at issue between the parties is "core" within the meaning of § 157(b)(2) of the Bankruptcy Code (the Code). *In re Northwestern Institute of Psychiatry*, 268 B.R. 79, 85 (Bankr. E.D.Pa.2001). Additional factors to be considered include:

> the uniformity of bankruptcy administration, forum shopping and confusion of fora, conservation of creditor and debtor resources, expediency of the bankruptcy proceeding, and the fact that equitable issues are posed, not requiring a jury trial but falling within the traditional equitable powers of a bankruptcy judge as chancellor.

*In re EquiMed, Inc.*, 259 B.R. 269, 273 (D.Md.2001) (citing *In re Merryweather Importers, Inc.*, 179 B.R. 61, 63 (D.Md. 1995)). It is the movant's burden to show cause for the permissive withdrawal of reference to bankruptcy court. *See In re Big*

*v. Holding Corp.*, No. 01–233(GMS), 2002 WL 1482392, at *3 (D.Del. July 11, 2002).

## B. Analysis

■ Defendant argues that the adversary proceeding instituted against it by Plaintiff is not core to Plaintiff's bankruptcy case. As such, the bankruptcy court would not be able to enter final judgment in the proceeding and its proposed findings of fact and conclusions of law would have to be reviewed de novo by the district court. 28 U.S.C. § 157(c)(1). Defendant anticipates that this dual review process would be "expensive, time-consuming and wasteful" and would not serve the interests of judicial efficiency.

The distinction between what is "core" to a bankruptcy case and what is "non-core" is unclear. *In re Apex Express Corp.*, 190 F.3d 624, 631 (4th Cir.1999). Section 157(b)(2) of the Code provides an illustrative, but non-exhaustive, list of examples of what constitute core proceedings. Needless to say, none of the examples quite describes the present case, although Plaintiff highlights § 157(b)(2)(A): matters concerning the administration of the estate, § 157(b)(2)(C): counterclaims by the estate against persons filing claims against the estate, and § 157(b)(2)(O): other proceedings affecting the liquidation of the assets of the estate, as relevant to its case. The Fourth Circuit provided its view on the core/non-core distinction in *In re Apex:*

> On the one hand, a broad reading of the literal terms of the statutory text could lead to the result that courts treat just about every dispute as "core." *See, e.g.,* 28 U.S.C.A. § 157(b)(2)(A) ("matters concerning the administration of the estate"); § 157(b)(2)(O) ("Other proceedings affecting the liquidation of the assets of the estate"). But, the statute must be interpreted keeping in mind (1)

that Congress passed it in response to the defects revealed by *Northern Pipeline [Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (in which the Court decried the allowance of non-Article III bankruptcy courts to hear claims based upon state-created private rights that arose independent from and antecedent to the bankruptcy proceedings and involved strangers to the bankruptcy action)] and (2) that *Northern Pipeline* remains good law, even if perhaps narrowed by subsequent decisions . . . .

*Id.* at 631 (citations omitted). The *In re Apex* court considered the question of whether certain "accounts receivable" claims against strangers to a bankruptcy based on pre-petition contract-based rights could be considered "core." That court concluded that "[w]e think the better approach is that such claims, at least when grounded in state law and arising pre-petition, must be treated as non-core." *Id.*

Here, as in *In re Apex,* Plaintiff's claims are grounded in state law and derive from a pre-petition contract. However, as Plaintiff strenuously emphasizes, the holding in *In re Apex* can be distinguished from the present case because *In re Apex* involved contract claims asserted against a stranger to the bankruptcy case. Here, Defendant is not a stranger; it is a party to the troubled transaction—the sale of the used MAN Roland printing press—that is presumably in part a contributing factor in Plaintiff's bankruptcy filing. MAN Capital is a creditor in Plaintiff's bankruptcy case because the promissory notes executed to finance Plaintiff's purchase of the press were assigned to it by Defendant. Defendant is intimately—if not directly—involved in Plaintiff's bankruptcy case, and the breach of contract and tort claims brought against it by Plaintiff constitute an asset of the bankruptcy estate.

The Fourth Circuit's reasoning in *In re Apex* is rooted in the distinction between public and private rights:

> The Court in *Northern Pipeline* observed that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power" is a public right. *Northern Pipeline,* 458 U.S. at 71, 102 S.Ct. 2858 (plurality opinion). Because the public rights nature of bankruptcy proceedings gives Congress the power to assign judicial functions to non-Article III bankruptcy courts, the core/non-core distinction should depend upon the connection the claim has to this public right. The type of dispute at issue has some theoretical and indirect impact on the public act of debt restructuring. But, the dispute itself is entirely separate and entirely private—the contract-based liability between two private parties. *See id.* at 69–70, 102 S.Ct. 2858 (plurality opinion) (citing *Crowell v. Benson,* 285 U.S. 22, 51, 52 S.Ct. 285, 76 L.Ed. 598 (1932)). The resolution of the present private right dispute is hardly at the core of restructuring debtor-creditor relationships. To be faithful to *Northern Pipeline,* we must treat such a private rights dispute as a non-core matter.

*In re Apex,* 190 F.3d at 632. While the adversary proceeding at issue here involves private contract rights, the fact that the dispute over those rights constitutes a part of Plaintiff's bankruptcy estate and directly affects the restructuring of the public right of debtor-creditor relations, renders it neither "entirely separate" nor "entirely private." This court therefore finds that, under the analytical structure provided by the Fourth Circuit, Plaintiff's claims against Defendant, while not clearly "core," are also not obviously "non-core" to the bankruptcy case either.

█ The guidance provided by other circuits, while not binding on this court, is nevertheless somewhat helpful in further illuminating the "core" or "non-core" nature of Plaintiff's claims. The Fifth Circuit held that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In the Matter of Wood,* 825 F.2d 90, 97 (5th Cir. 1987). Plaintiff's claims here are not based on rights created by federal bankruptcy law, but rather on state created rights. Furthermore, the proceeding, while significant to the bankruptcy, is not one that could arise only in the context of a bankruptcy. These considerations would tend to militate against a finding that Plaintiff's claims are "core" to the bankruptcy.

Defendant characterizes Plaintiff's filing of the adversary proceeding in this court as an attempt to forum shop and circumvent the forum selection clause designating Illinois courts as the forum for resolving disputes between the parties. Based on the previous discussion of the relationship between Plaintiff's adversary proceeding and its bankruptcy case, however, for the purposes of Defendant's motion to withdraw reference, this court does not find it unreasonable that Plaintiff should have filed its claims against Defendant here.

Defendant also argues that the counts in Plaintiff's adversary proceeding are based purely on state law arising from the parties' contract and that the resolution of these claims does not require the expertise of the bankruptcy court. In fact, Defendant suggests that to the contrary, the issues presented in Plaintiff's claims would be better addressed by a non-bankruptcy judge. This argument strikes at the heart of the Court's consternation in *Northern Pipeline* regarding the potentially inappropriate reach of bankruptcy court jurisdiction over non-bankruptcy matters. It is

generally understood that Congress amended the Bankruptcy Code in the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Public Law No. 98–353; 98 Stat. 333), creating the distinction between "core" and "non-core" matters, in response to the concern articulated in *Northern Pipeline*. *See In the Matter of Wood*, 825 F.2d at 91. Bankruptcy courts were therefore granted full judicial power over "core" matters while their power over "non-core" matters was to be limited. *Id.* Having noted the close and significant relationship between Plaintiff's claims and its bankruptcy case, this court nevertheless finds that, with regard to the substantive law on which Plaintiff's claims are based, this adversary proceeding is not related enough to the field of bankruptcy law to be appropriately subject to the jurisdiction of and final determination by a bankruptcy court. This court will grant the permissive withdrawal of reference of Plaintiff's state contract and tort law-based adversary proceeding to the bankruptcy court.

### III. Motion to Dismiss

#### A. Standard of Review

Having granted Defendant's motion to withdraw reference to the bankruptcy court, this court will now consider Defendant's motion to dismiss Plaintiff's claims. Defendant moves to dismiss Plaintiff's cause of action on the basis of the forum selection clause contained in the contract under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, 12(b)(3) for improper venue, or 12(b)(1) for lack of subject matter jurisdiction. There is currently no procedural mechanism specifically tailored to handle a motion to dismiss based on a forum selection clause. The Fourth Circuit has not decided the issue of what approach to take and which subsection of Rule 12(b) is most appropriate for the situation. *See Acciai Speciali Terni USA, Inc. v. M/V Berane*,

181 F.Supp.2d 458 (D.Md.2002). Regardless, the approach that has generally been used in addressing such motions to dismiss is to adopt the standard provided by *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). *See Acciai*, 181 F.Supp.2d at 458; *see also Berry v. Soul Circus, Inc.*, 189 F.Supp.2d 290 (D.Md.2002); *see also Eisaman v. Cinema Grill Systems, Inc.*, 87 F.Supp.2d 446 (D.Md.1999).

■ In *Bremen*, the Supreme Court held that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10. These circumstances may be present where (1) agreement to the forum selection clause involved fraud or overreaching; (2) the complaining party will be effectively deprived of its day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; and (4) the enforcement would contravene a strong public policy of the forum in which the plaintiff has brought suit. *See Acciai*, 181 F.Supp.2d at 462–63 (citing *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir.1996)); *see also Berry*, 189 F.Supp.2d at 293. The burden is placed on the plaintiff bringing suit in a forum other than the one designated in the forum selection clause to make a "strong showing" that the court should exercise jurisdiction in derogation of the contract. *Acciai*, 181 F.Supp.2d at 462 (citing *Bremen*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

#### B. Analysis

■ Defendant argues that it would not be unreasonable to submit Plaintiff's claims against it to the Illinois courts; Defendant asserts that the forum selection

clause in the contract is enforceable and that none of the circumstances articulated in *Bremen* that militate against enforcement is present in this case. Plaintiff, on the other hand, insists that this suit should not be dismissed because it is a "core" bankruptcy proceeding under § 157(b)(2) of the Bankruptcy Code (the Code), 28 U.S.C. § 157(b)(2), and should be kept together with the rest of Plaintiff's bankruptcy case. In the alternative, Plaintiff argues that the contract's forum selection clause should not be enforced because it would contravene the public policy favoring the consolidation of bankruptcy matters if these claims were to be litigated elsewhere.

Having already engaged in the difficult and unresolved analysis of whether Plaintiff's claims are "core" to the bankruptcy case, this court reiterates its admittedly equivocal finding that Plaintiff's claims present themselves as something in between.

This court therefore addresses Plaintiff's argument in the alternative that even if its claims against Defendant are not considered core, they should not be dismissed because they are nevertheless related to Plaintiff's bankruptcy case. Plaintiff does not challenge the enforceability of the forum selection clause per se. Plaintiff does not allege that agreement to the forum selection clause involved fraud or overreaching, that it would be effectively deprived of its day in court because of the grave inconvenience or unfairness of the selected forum, or that the chosen law would be fundamentally unfair and would deprive it of a remedy. Plaintiff only argues that the enforcement of the forum selection clause in this case would contravene a strong public policy of this forum: the policy of consolidating bankruptcy-related matters.

No case in the Fourth Circuit addresses the balancing of this public policy against the interests served by enforcing a forum selection clause. However, a case from the Middle District of Tennessee, *In re McCrary & Dunlap Constr. Co., LLC*, 256 B.R. 264 (Bankr.M.D.Tenn. 2000), does address this exact point. There, the bankruptcy court held that "[t]he policy favoring centralization of bankruptcy proceedings is policy [ ] not so strong as to abandon the forum selection clause where the proceeding is non-core." *Id.* at 267. Furthermore, the district court in *Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.*, 53 B.R. 1007 (S.D.N.Y. 1985), observed that the public policy favoring the centralization of bankruptcy proceedings is not to centralize them in a single judicial *district*, but in the *bankruptcy court* where the chapter proceeding is pending. *Id.* at 1013. This court has already determined that, because of the pre-petition, state-based subject matter of Plaintiff's claims against Defendant and despite the possible significance of those claims to the administration of the bankruptcy estate, reference of Plaintiff's adversary proceeding to bankruptcy court should be withdrawn. It follows therefore that since Plaintiff's claims will not be heard in the bankruptcy court where its chapter 11 proceeding is pending, the public policy favoring the enforcement of the forum selection prevails.

## IV. Transfer

Under either 28 U.S.C. § 1404 or § 1406, it is within the discretion of this court to transfer this case to an appropriate federal court to obviate Plaintiff's refiling of its claims and re-serving the Defendant. In accordance with the terms of the contract's forum selection clause, the transfer would be to the United States District Court for the Northern District of

Illinois. Before doing so, however, the court will give the parties an opportunity to show why the case should be dismissed, rather than transferred. Accordingly, the parties will be provided until December 9, 2002, to show cause why the case should not be transferred.

## V. Conclusion

For the foregoing reasons, Defendant's motion to withdraw reference to the bankruptcy court will be granted. Defendant's motion to dismiss based on the forum selection clause will either be granted or the case will be transferred to the United States District Court for the Northern District of Illinois.